CARMEN NADAL DEL MORAL, Petitioner and Appellee, v. JOSÉ MURATTI, Respondent and Appellant.

No. 3440. Argued February 5, 1925.—Decided May 9, 1925.

1. INJUNCTION—SERVITUDE—RIGHT OF WAY.—It being alleged in a petition for an injunction that the respondent obstructed a right of way and the evidence of the petitioner showing that the right of way was not obstructed but simply regulated, it was held that the petition should have been denied.

2. ID.—ID.—ID.—TIME IMMEMORIAL.—A servitude of right of way can not be considered as having been in existence since time immemorial when the evidence shows that a road was opened in the season of 1893–4 and that its use was merely tolerated.

3. ID.—ID.—ID.—TITLE.—Since the year 1890 when the Civil Code went into effect servitudes of right of way can be acquired only by virtue of a title.

District Court of Mayagüez, Angel Acosta, J. Judgment for the petitioner in injunction proceedings. *Reversed.*

*Alfredo Arnaldo Sevilla* for the appellant. *José Sabater* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

The petitioner prayed for a writ of injunction on the allegation that the respondent had prevented her from using two roads. A preliminary writ was issued and after the final hearing the court rendered judgment against the respondent. The judgment recognizes the existence of two rights of way imposed on the property of the respondent in favor of two properties of the petitioner. The respondent appealed and assigns six errors which we shall consider after having shown how the issue was joined and how the trial court weighed the evidence and applied the law.

The petitioner alleged that she was the owner of two properties, one of five acres on which is located the square of the Flora plantation bounded on all sides by lands of Muratti, and another of 55 acres bounded on the north by a country road, on the south by the river and on the east

and west by lands of Muratti.  The petitioner also alleged that her property of five acres is connected with the highway between Mayagüez and San Germán by a road through the lands of Muratti for a distance of 100 meters which "has existed since time immemorial" and that her property of 55 acres is connected with the property of 5 acres by another road about 200 meters long that also passes through the lands of Muratti and which she has been using "since time beyond which the memory of man runneth not to the contrary."  And the petitioner finally alleged that the respondent had prevented her from using both roads by building a wooden gate in front of the highway and closing the gate so as not to allow any person to pass, and by erecting a fence at the entrance to the road which connects the property of five acres with that of fifty-five acres, all of which he did maliciously and without any right.

The respondent denied that he had acted without authority or maliciously.  He explained the matter as follows: He alleged that the road which connects the property of five acres with the highway was opened in 1870 upon the construction of the establishments of the Flora plantation and that until 1900 there was a gate in front of the highway which could be locked, the respondent's father having one key and the owners of the establishments another, and that now he has only reconstructed the gate and delivered a key to the petitioner's overseer.  As to the other road, he denied its existence since time immemorial and that the plaintiff had any right to use it, alleging that its use was merely tolerated since the grinding season of 1893–1894. The proceedings were brought in 1922.

After trial the court, as we have said, rendered judgment for the petitioner for the reasons stated in an opinion which reads in part as follows:

"The court finds from the evidence that the road connecting the five-acre property with the highway between Mayagüez and San

Germán was opened in the year 1870 when the establishments of the Flora plantation were built on the said property of five acres; and the court also finds from the evidence that the road connecting the property of five acres with the property of fifty-five acres was opened during the grinding season of 1893–1894, by the tolerance of Francisco Muratti, the ancestor of respondent José Muratti.

"As may be seen from the allegations of the defendant, the servitude of right of way is not denied, for it is admitted and alleged that although fences and gates were erected and padlocked, one of the keys was given to the petitioner's overseer so that he could use the road freely, it being said that the key was delivered to Santos López, the overseer employed by petitioner Carmen Nadal del Moral on the property.

"The court finds that the said roads have been used in good faith since time immemorial, as shown by the testimony of some witnesses who are more than 70 years of age, for which reason, considering the case of Nido & Co. v. Albir Alicea, 27 P.R.R. 32, and the present case being governed by the laws in force prior to the adoption of the Civil Code, the petitioner had a right to plead the immemorial use of the said roads in order to establish her right to use them and prove, as she has, by the testimony of the said witnesses such use since time immemorial.

"The respondent alleges that this servitude of right of way, which falls under section 546 of the revised Civil Code, equivalent to article 539 of the Spanish Civil Code, can be acquired only by virtue of a title and not by prescription as alleged by the petitioner, but the court is of the opinion that this case is governed by the laws in force prior to the enactment and promulgation of the present Civil Code and that the law applicable is the Law of *Partidas* and more especially Laws 14 and 15 of Title 31 of the Third *Partida* which authorize the acquisition of such servitudes by virtue of use from time immemorial, as follows:

" 'We declare that whoever should seek to acquire them on this ground must, either by himself or by his predecessors in interest, have made use of them for such a long time that no man can recollect when they commenced to use them.'

"Several witnesses testified that they had known those roads, the servitude of right of way, since slavery was abolished in the year 1873, or more than fifty years before, and some of the witnesses who testified to these facts were 84, 75 and 62 years old."

In his brief the appellant assigns six errors. We shall discard the sixth assignment, referring to an ocular inspection which he thinks should have been made, and the fifth, which raises a technical question concerning the dissolution of the preliminary writ, and consider jointly the remaining four referring to the findings and the application of the law.

The opinion of the lower court shows on its face that there is some inconsistency between the conclusions contained in the first paragraph and those of the third, fourth and fifth paragraphs. A similar confusion is found in much of the testimony, but a careful study of the testimony leads to the conclusion that the truth is contained in the first paragraph. Two entirely distinct cases are stated.

[1] With regard to the existence of the servitude of right of way from the five-acre property to the highway there is no question. It is admitted by the respondent. In the year 1870 it was decided to construct a sugar factory at that place, which is in the district of Hormigueros very near Cabo Rojo and San Germán, and for that purpose five acres were separated within a property of Dávila, the predecessor in interest of Muratti. It was absolutely necessary to provide an outlet and communication was allowed with the highway between Mayagüez and San Germán over the land of Dávila which now belongs to Muratti. The only point to be decided is that concerning the gate. Did it obstruct the right of way? In our opinion the evidence is positive that its use was merely regulated. The gate was only reconstructed. A witness for the petitioner, her son and attorney in fact, Francisco del Moral, admitted that a key to the gate was given to the overseer of the plantation and that passage was not obstructed.

Such being the case and the allegations of the petition for an injunction not having been established, it is clear that it should not have been sustained on this point.

[2, 3] Let us now inquire into the facts as to the servitude of right of way from the property of five acres to the property of fifty-five acres. From the evidence of the petitioner it appears that the road that has been in use was opened after 1889, the year in which she acquired the property of fifty-five acres from the firm of Moral, González & Co. The evidence of the respondent establishes the time of the grinding season of 1893–1894, during which owing to the fact that some cane was burned the respondent's father permitted the overseer of Moral, González & Co. to haul it over that road for immediate grinding and since that time its use was allowed as a matter of mere tolerance.

There is in the petitioner's evidence a vague suggestion that what was done in 1893 was to change the road, but that reference can in no manner be sufficient to support the acknowledgment of a servitude.

The year 1890 is of decisive importance because that was the year when the Civil Code went into effect and since that time the servitude in question could be acquired only by virtue of a title, and in this case such a means of acquisition has not even been mentioned.

The case of *Nido & Co.* v. *Alicea,* 27 P.R.R. 32, cited by the trial judge in his opinion, is not similar to the present case. There the party who could have been injured admitted that the law in force prior to the Civil Code was applicable, and besides the testimony of very old people who testified to the use from time immemorial, admissions of a former owner of the servient tenement were produced. Here the district court found that the road was opened during the grinding season of 1893–1894, there were no admissions, and the testimony of the witnesses for the petitioner does not support her theory, that is, use from time immemorial.

It seems well to say that the property of fifty-five acres,

as appears from the petition, is bounded on one side by a country road leading to the ward of Duey, and it is possible, although by a detour that increases the distance, to transport products over this road to the highway and then over the highway to the establishments of the factory situated on the property of five acres.

It is clear that the road which was being used was more convenient. The use of roads by tolerance is a matter of frequent occurrence in the rural districts of Porto Rico. Flooded rivers and streams, bad condition of certain country roads, short cuts, friendship, establishing of schools and stores at given places, fear of provoking controversies or unfriendliness, desire to favor neighbors by making distance shorter and travel easier, and many other circumstances can be pointed to as causes for this condition. No doubt a similar situation and the idea of fixing and making certain something which is a privilege of great importance for one and an encumbrance of no less importance for the other were the causes that prompted the Spanish legislators to modify the law and the Portorican Legislature to let the modification stand. Hence, travel which is merely tolerated generally continues until there is abuse, as the evidence showed there was in this case. Therefore, when one seeks to obtain an absolute and permanent right he knows that he must enter into a contract in order to acquire the right for an appropriate consideration, and the right so acquired can be secured as against third persons by recording it according to the provisions of the Mortgage Law. After 1890 the indefinite and vague conditions concerning this kind of a servitude disappeared in Porto Rico.

By virtue of all of the foregoing the judgment must be reversed and the petition denied, without costs.